UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

Brian Davenport,

   Plaintiff,

v.

MERCK & CO., INC. and
MERCK SHARP & DOHME & DOHME CORP.,

   Defendants.

Court File No.: 1:13-cv-00527(JG)(VVP)

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Plaintiff, Brian Davenport ("Plaintiff"), by and through his undersigned Counsel, states and brings tis civil action before the Court for the United States District Court for the Eastern District of New York as a related action in the matter entitled <u>IN RE: PROPECIA (FINASTERIDE) PRODUCT LIABILITY LITIGATION</u>, MDL No. 2331 against the Defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp. (collectively "defendants"), alleges as follows:

## NATURE OF THE CASE

1. This is an action for damages suffered by Plaintiff as a direct and proximate result of Defendant's wrongful conduct in connection with the development, design, testing, labeling, packaging, promoting, advertising, marketing, distribution, and selling of Defendants' prescription medication Propecia.

2. Defendants manufacture and sell Propecia as a prescription treatment for androgenic alopecia.

3. Defendants knew or should have known that Propecia, when taken as prescribed and intended, causes and contributes to an increased risk of persistent and/or permanent serious

1

and dangerous side effects including, without limitation, cognitive impairment, development of depression, and various forms of sexual dysfunction such as erectile dysfunction, reduced ejaculate volume, diminished or reduced libido, reduced sexual sensation and/or infertility ("sexual dysfunction") even after discontinuation of use.

## JURISDICTION

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. Venue in this action properly lies in this judicial district pursuant to 28 U.S.C. § 1391(a), as a substantial number of the events, actions or omissions giving rise to Plaintiff's claims occurred in this district. At all times material hereto, Defendants conducted substantial business in this district.

## PARTIES

6. Plaintiff is a citizen of the state of Oklahoma, and a resident of Inola, Oklahoma. Plaintiff was prescribed medication and experienced injuries while domiciled in Oklahoma.

7. Upon information and belief, Defendant Merck & Co., Inc. is a corporation organized and existing under the laws of New Jersey, and has its principal place of business located in Whitehouse Station, New Jersey.

8. Upon information and belief, Defendant Merck Sharp & Dohme Corp. is a corporation organized and existing under the laws of New Jersey, and has its principal place of business located in Whitehouse Station, New Jersey.

9. At all times relevant herein, Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed,

distributed, and sold the prescription drug Propecia in interstate commerce and throughout Oklahoma. At all times relevant herein, Defendants were registered to do business in Oklahoma.

## GENERAL FACTUAL ALLEGATIONS

10. Finasteride was initially developed to treat patients with symptoms of benign prostatic hyperplasia ("BPH"), and then later approved for the treatment of androgenic alopecia, also known as male pattern hair loss.

11. Male pattern hair loss affects 30% of men by the age of 30 years and 50% of men by the age of 50 years. Men who suffer from hair loss may be perceived as older and less physically and socially attractive.

12. Male pattern hair loss is a common condition thought to be caused by a combination of genetic factors and a hormone called dihydrotestosterone ("DHT").

13. DHT is a substance in the body that can shrink hair follicles until a person no longer has hair on top of his head.

14. Finasteride is a 5-alpha reductase inhibitor that decreases the conversion of testosterone to DHT, therefore, preventing hair loss.

15. Propecia, or finasteride, may produce undesirable side effects to patients who use the prescription drug, including but not limited to, sexual dysfunction and cognitive impairment.

16. The rates of the sexual dysfunction as a result of finasteride are reported to be as high as 39% in published clinical studies. In addition, it has been reported in 2003 that only 50% of patients experience resolution of their sexual function adverse events after discontinuation of finasteride.

3

## PROPECIA LABEL AND SIDE EFFECTS

17. The U.S. Food and Drug Administration ("FDA") initially approved finasteride in 1992 under the brand name Proscar as a treatment for BPH. Proscar is the brand name of the five (5) milligram tablet of finasteride.

18. In 1997, the FDA approved Propecia as a one (1) milligram tablet of finasteride for prescription use as a cosmetic treatment for male pattern hair loss.

19. Over one million people in the United States have used Propecia since introducing the prescription drug into the U.S. market.

20. Defendants promote the use of Propecia for treatment of male pattern hair loss as a safe treatment with minimal risk. In its product labeling, Defendants represent that a limited number of users may experience side effects including sexual dysfunctions such as decreased libido, erectile dysfunction, and ejaculation disorder as well as potential depression.

21. In 2006, the Swedish Medical Products Agency began investigating reports of persistent sexual dysfunctions that continued in men despite discontinuing Finasteride.

22. In 2008, Defendants changed the Propecia label in Sweden to include the following warning:

> In addition, the following have been reported in post-marketing use: persistence of erectile dysfunction after discontinuation of treatment with PROPECIA.

23. In August 2009, the Swedish Medical Products Agency concluded that Propecia could lead to permanent erectile dysfunction.

24. Upon information and belief, Defendants have also changed the Propecia label in other European countries, including the United Kingdom and Italy, to include a warning of persistent and/or permanent erectile dysfunction after discontinuation of treatment

25. The Medicine Health Care Products Regulatory Agency public assessment report on the risk of finasteride published in December of 2009 stated that, "In addition, the following have been reported in post-marketing use: persistence of ED after discontinuation of treatment with PROPECIA." (Section 4.8 Undesirable Effects).

26. According to the FDA's website, Defendants have updated the Propecia label in the United States nine times since introducing the drug into the market, and none of the label revisions have included a warning regarding persistent and/or permanent sexual dysfunction in patients that discontinued use of the prescription drug.

27. In April of 2011, Defendants updated its "Patient Information about Propecia" insert to indicate patients have reported "difficulty in achieving an erection that continued after stopping the medication." Upon information and belief, Defendants updated insert is the first warning it gave to patients in the U.S. regarding persistent and/or permanent sexual dysfunction after discontinuation of use.

28. Upon information and belief, the Propecia label distributed in the United States continues to fail to warn users of persistent and/or permanent sexual dysfunction and cognitive impairment after discontinuation of use.

**SPECIFIC FACTUAL ALLEGATIONS**

29. In 2010, Plaintiff Brian Davenport was 38 years of age when he was prescribed and began consuming Propecia for male pattern hair loss. Plaintiff was regularly prescribed and consumed Propecia in 2010.

30. Prior to using Propecia, Plaintiff did not suffer from sexual dysfunctions or cognitive impairment. However, while consuming Propecia, Plaintiff began to suffer severe sexual dysfunction and cognitive impairment. Plaintiff's adverse effects continued after Plaintiff discontinued using Propecia.

5

31.	To date, Plaintiff continues to suffer from adverse side effects, including but not limited to, sexual dysfunction and cognitive impairment. As a direct and proximate cause of his Propecia-induced side effects, Plaintiff has suffered significant pain and suffering, and his quality of life has been severely diminished.

## FRAUDULENT CONCEALMENT

32.	Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of material facts known by each defendant when it had a duty to disclose those facts. Each defendant has kept plaintiff ignorant of vital information essential to its pursuit of these claims, without any fault or lack of diligence on plaintiff's part, for the purpose of obtaining delay on plaintiff's part in filing a complaint on their causes of action. Each defendant's fraudulent concealment did result in such delay. Plaintiff could not reasonably have discovered these claims until shortly before filing his original complaint.

33.	Each defendant was under a continuing duty to disclose the true character, quality, and nature of its drug that Plaintiff ingested, but instead concealed them. As a result, each defendant is estopped from relying on any statute of limitations defense.

## FIRST CAUSE OF ACTION
## STRICT LIABILITY

34.	Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

35.	At all relevant times hereto, Defendants were engaged in the development, testing, manufacturing, marketing and sales of Propecia. Defendants designed, manufactured, marketed, and sold Propecia to medical professionals and their patients, knowing it would be ingested for the treatment of male pattern hair loss.

36. Propecia as designed, manufactured, marketed and sold by Defendants reached Plaintiff without substantial change in its condition and was used by Plaintiff in a reasonably foreseeable and intended manner.

37. Propecia was "defective" and "unreasonably dangerous" when it entered the stream of commerce and was received by Plaintiff, because it was dangerous to an extent beyond that which would be contemplated by the ordinary consumer. At no time did Plaintiff have reason to believe that Propecia was in a condition not suitable for its proper and intended use among patients.

38. Propecia was used in the manner for which it was intended, that is, for treatment of male pattern hair loss. This use resulted in injury to Plaintiff.

39. Plaintiff was not able to discover, nor could he have discovered through the exercise of reasonable care, the defective nature of Propecia. Further, in no way could Plaintiff have known that Defendants had designed, developed, and manufactured Propecia in such a way as to increase the risk of harm or injury to the recipients of Propecia.

40. Propecia is defective in design because of its propensity to cause persistent and/or permanent sexual dysfunction side effects and other indefinite injuries after discontinuation of use.

41. Propecia is unreasonably dangerous because it was sold to Plaintiff without adequate warnings regarding, *inter alia,* accurate information about the risk of sexual dysfunction while ingestion Propecia, the propensity of Propecia to cause persistent sexual side effects after discontinuation of use; the post-marketing experience with Propecia; and the numbers of sexual adverse events reported.

42. Defendants failed to develop and make available alternative products that were designed in a safe or safer manner, even though such products were feasible and marketable at the time Defendants sold Propecia to Plaintiff.

43. Defendants had knowledge and information confirming the defective and dangerous nature of Propecia. Despite this knowledge and information, Defendants failed to adequately and sufficiently warn Plaintiff and his physicians that Propecia causes significant risk of sexual dysfunction and serious persistent and/or permanent injuries including, without limitation, sexual dysfunction and cognitive impairment during and after discontinuation of use.

44. As a direct and proximate result of Defendants' wrongful conduct, including Propecia's defective and dangerous design and inadequate warnings, Plaintiff has sustained and will continue to sustain severe and debilitating injuries, pain and suffering, economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, and treatments for depression, emotional distress, and anxiety, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE**

45. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

46. At all relevant times, Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, marketing, sale, and distribution of Propecia, including a duty to ensure that Propecia did not pose a significantly increased risk of sexual dysfunction, including but not limited to, persistent and/or permanent injury to its users.

47. Defendants had a duty to exercise reasonable care in the advertising and sale of Propecia, including a duty to warn Plaintiff and other consumers, of the dangers associated with

8

the consumption of Propecia that were known or should have been known to Defendants at the time of the sale of Propecia to the Plaintiff.

48. Defendants failed to exercise reasonable care in the design, testing, manufacture, marketing, sale and distribution of Propecia because Defendants knew or should have known that Propecia had a propensity to cause serious injury, including persistent and/or permanent sexual dysfunction and cognitive impairment during and after discontinuation of use.

49. Defendants failed to exercise ordinary care in the labeling of Propecia and failed to issue adequate pre-marketing or post-marketing warnings to prescribing doctors and the general public regarding the risk of serious injury, including, without limitation, persistent and/or permanent sexual dysfunction side effects and cognitive impairment during and after discontinuation of use.

50. Defendants knew or should have known that Plaintiff could foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

51. Defendants breached their duty of reasonable care to Plaintiff by failing to exercise due care under the circumstances.

52. As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, formulation, testing, manufacture, sale, and distribution of Propecia, Plaintiff ingested Propecia and suffered severe and debilitating injuries, pain and suffering, and economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, and treatments for depression, emotional distress, and anxiety, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTIES

53. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

54. Defendants designed, formulated, tested, manufactured, marketed, sold, and distributed Propecia as has previously been alleged and described herein.

55. At the time Defendants marketed, sold and distributed Propecia, Defendants knew of the use for which Propecia was intended and impliedly warranted that Propecia was merchantable, safe and fit for its intended purpose: namely that Plaintiff could ingest Propecia without the risk of serious persistent and/or permanent sexual dysfunction and cognitive impairment during and after discontinuation of use.

56. Plaintiff, foreseeable user of Propecia, and Plaintiff's physician(s), reasonably relied upon Defendants' judgment and implied warranties in purchasing and consuming Propecia as intended.

57. Propecia was defective, unmerchantable, and unfit for ordinary use when sold, and subjected Plaintiff to severe and permanent injuries.

58. Defendants breached their implied warranties because Propecia was and continues to be neither of merchantable quality nor safe for its intended use in that Propecia has the propensity to cause persistent sexual dysfunction and other bodily harm during and after discontinuation of use.

59. As a direct and proximate result of Defendants' breach of the implied warranties of merchantability and fitness for its intended purpose, Plaintiff ingested Propecia and suffered severe and debilitating injuries, pain and suffering, and economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, and treatments for depression,

emotional distress, and anxiety, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

60. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

61. Defendants through their marketing program, promotional activities, product labeling, package inserts, and other written and verbal assurances expressly warranted to physicians and consumers, including Plaintiff and/or his physicians, that Propecia had been shown by scientific study to be safe for its intended use.

62. Plaintiff, and/or his physicians, reasonably relied upon Defendants' express warranties in purchasing consuming, and prescribing Propecia.

63. Defendants breached their express warranties because Propecia as manufactured and sold by Defendants does not conform to these express representations in that Propecia has a propensity to cause persistent sexual function and other bodily harm during and after discontinuation of use.

64. As a direct and proximate result of Defendants' breach of their express warranties, Plaintiff ingested Propecia and suffered severe and debilitating injuries, pain and suffering, and economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, and treatments for depression, emotional distress, and anxiety, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## FRAUD

65. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

66. Defendants were under a duty and failed to discharge their duty to exercise reasonable care to disclose to Plaintiff and his doctors the defective nature and risks that Propecia can cause severe and permanent injuries, including, without limitation, persistent and/or permanent sexual dysfunction and cognitive impairment during and after discontinuation of use, of which they had special knowledge not available to Plaintiff or his doctors, and as to which they made affirmative representations in violation of all applicable laws, and concealed material facts relating to the defective nature and risks of Propecia, which were peculiarly within its knowledge, knowing that Plaintiff and his doctors would rely on the presumption that no such facts exist.

67. Defendants knew that Propecia can cause severe injuries, including, without limitation, persistent and/or permanent sexual dysfunction and cognitive impairment; indeed, Defendants knew that persistent and/or permanent sexual side effects associated with Propecia had occurred for years. Defendants had actual knowledge at the time of sale of Propecia to the Plaintiff that Propecia created a risk of serious bodily injury to its users, including, without limitation, sexual dysfunction side effects and cognitive impairment, based, in part, upon test results, studies, adverse reaction reports, regulatory action in foreign countries, published reports, and their own clinical trials and post-marketing surveillance of Propecia and its generic form, Finasteride.

68. At all times during the course of dealing between Defendants and Plaintiff, Defendants knowingly and recklessly omitted and concealed information peculiarly within their

knowledge to the Plaintiff, his doctors, the scientific community and to the general public - e.g., the dangers of Propecia, including the special risk of persistent and/or permanent sexual dysfunction and cognitive impairment during and after discontinuation of use - knowing that the scientific community, the general public, the Plaintiff and his doctors, would rely on the presumption that the dangers did not exist.

69.     Defendants actively concealed from the Plaintiff, his doctors, the scientific community and the general public:

   i.    that their own test results, published studies, and/or clinical trials showed a risk of serious injuries associated with Propecia including, without limitation, persistent and/or permanent sexual dysfunction and cognitive impairment during and after discontinuation of use; and/or

   ii.   that Propecia was not adequately tested for persistent and/or permanent sexual dysfunction or cognitive impairment before or after its introduction on the market; and/or

   iii.  that Propecia was, in fact, unsafe as it posed a risk of injury which outweighed any purported benefits.

70.     Defendants misrepresented that Propecia was safe and effective for its intended uses by affirmative misrepresentation, and/or actively concealment and omission of material facts regarding the safety and effectiveness of Propecia, and by their course of conscious or intentional conduct succeeded in selling and marketing a drug with persistent and/or permanent adverse effects to be ingested by Plaintiff. Defendants intentionally omitted, concealed and/or suppressed this information from consumers, including Plaintiff and his doctors, in order to avoid losses in sales to consumers and market share to its major competitors.

71. Moreover, Defendants engaged in an aggressive marketing strategy, which included false representations regarding the adverse side effects of Propecia to create the impression and to convey to Plaintiff and the general public that:

    i. Propecia had a favorable safety profile and was fit for human consumption;

    ii. the benefits of taking Propecia outweighed any associated risks; and

    iii. the use of Propecia was safe and had fewer adverse health and side effects than were known or should have been known by Defendants at the time of these representations.

72. The omissions, misrepresentations and concealment described in the preceding paragraphs occurred, without limitation, in the Propecia warning labels, advertisements and promotional materials, in the Defendants funded or created scientific reports, and the failure to provide other special notification of the dangers of Propecia to the Plaintiff or his physicians, for example, Dear Doctor letters. The Defendants' statements omitted, concealed, and misrepresented the dangers of serious injury, including, but not limited to, persistent and/or permanent sexual dysfunction and cognitive impairment during and after discontinuation of use to Plaintiff and his prescribing doctors.

73. Defendants engaged in fraud by deliberately and affirmatively concealing and failing to disclose adverse reactions of Propecia to Plaintiff, his doctors, the scientific community, and the general public, and by disseminating only positive and misleading scientific data, and by concealing scientific data that showed increased risk of persistent and/or permanent injury during and after discontinuation of use, to Plaintiff, his doctors, the scientific community, and the general public.

74. Plaintiff, and his prescribing physician, relied on the warning labels as they appeared in the patient package insert at the time they prescribed or consumed Propecia. The applicable warnings concealed and omitted material facts relating to the defective nature and risks of Propecia. These dangers were peculiarly within the Defendants' knowledge, and were omitted and concealed knowing that Plaintiff and his doctors would rely on the presumption that no such facts exist.

75. Defendants knew or should have known that their representations and omissions regarding the safety of Propecia were, in fact, false and/or misleading, and actively made such representations and omissions with the intent, design, and purpose that Plaintiff and others, including prescribing physicians, rely on these representations leading to the prescription, purchase and consumption of Propecia.

76. At all times herein, Plaintiff and his physicians were unaware of the dangers of Propecia with respect to persistent and/or permanent sexual dysfunction and cognitive impairment during and after discontinuation of use, and were reasonably misled by the Defendants' omission of information about this danger.

77. At all times herein, Plaintiff and his physicians were unaware of the falsity underlying Defendants' statements and reasonably believed Defendants' false statements about the safety and efficacy of Propecia to be true.

78. Plaintiff and his doctors could not have discovered Defendants' fraudulent and misleading conduct at an earlier date through the exercise of reasonable diligence because Defendants actively concealed their deceptive, misleading and unlawful activities.

79. Plaintiff and his physicians did, and could be expected to, reasonably and justifiably rely on Defendants' representations and omissions because Defendants held themselves out as having expertise and specialized knowledge in the pharmaceutical industry.

80. Plaintiff justifiably relied upon to his detriment and/or was induced by Defendants' false statements and active concealment over the safety of Propecia, in part, because at no time did Plaintiff or his physicians have the knowledge or expertise necessary to independently evaluate the safety of Propecia.

81. Defendants' misrepresentations, concealment, suppression and omissions were made willfully, wantonly, uniformly, deliberately, or recklessly, in order to induce Plaintiff to purchase Propecia and Plaintiff and his physicians did reasonably and justifiably rely upon the material misrepresentations and omissions made by the Defendants about Propecia when agreeing to purchase and/or ingest Propecia.

82. As a direct and proximate result of Defendants' false representations and/or active concealment of material facts regarding the safety and efficacy of Propecia, Plaintiff ingested Propecia and suffered severe and debilitating injuries, pain and suffering, and economic loss, and other damages including, but not limited to, cost of medical care, rehabilitation, and treatments for depression, emotional distress, and anxiety, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF UNFAIR AND DECEPTIVE TRADE PRACTICES ACTS**

83. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

84. Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of Propecia.

85. Had the Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased and/or paid for Propecia, and would not have incurred related medical costs. Specifically, Plaintiff, his physician, and his staff were misled by the deceptive conduct described herein.

86. Defendants' deceptive, unconscionable, and/or fraudulent representations and material omissions to patients, physicians and consumers, including Plaintiff, constituted unfair and deceptive acts and trade practices in violation of the state consumer protection statute listed below.

87. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiff for Propecia that they would not have paid had Defendants not engaged in unfair and deceptive conduct.

88. Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representation in violation of 15 O.S.2001 § 751 et seq.

89. Plaintiff was injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at patients, physicians and consumers was to create a demand for and sell Propecia. Each aspect of Defendants' conduct combined to artificially create sales of Propecia.

90. The medical community relied upon Defendants' misrepresentations and omissions in determining to use Propecia.

91. By reason of the unlawful acts engaged in by Defendants, Plaintiff has suffered ascertainable loss and damages.

92. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff was damaged by paying in whole or in part for Propecia.

93. As a direct and proximate result of Defendants' violations of the District of Columbia's unfair trade practice acts, Plaintiff has sustained economic losses and other damages for which he is entitled to statutory and compensatory damages, and declaratory relief, in an amount to be proven at trial.

## SEVENTH COUNT
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

94. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

95. Defendants carelessly and negligently manufactured, marketed, and sold Propecia to Plaintiff, carelessly and negligently concealed these defects from Plaintiff, and carelessly and negligently misrepresented the quality and safety of Propecia. Defendants should have realized that such conduct involved an unreasonable risk of causing emotional distress to reasonable persons, that might, in turn, result in illness or bodily harm.

96. Defendants owed a duty to treating physicians and Plaintiff to accurately and truthfully represent the risks of Propecia. Defendants breached that duty by misrepresenting and/or failing to adequately warn of the risks of Propecia – effects of which Defendants knew or in the exercise of diligence should have known – to the treating physicians and Plaintiffs.

97. As a direct and proximate result of Defendants' wrongful conduct and breach of duty, Plaintiff has sustained and will continue to sustain severe emotional distress either due to physical injury or a rational fear of physical injury and is entitled to recovery of damages in an amount to be proven at trial. Defendants are liable to Plaintiffs jointly and/or severally for all general, special and equitable relief to which Plaintiff is entitled by law in an amount to be proven at trial.

**WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

1. Compensatory damages, in excess of the amount required for federal diversity jurisdiction, and in an amount to fully compensate Plaintiff for all his injuries and damages, both past and present;

2. Special damages, in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate Plaintiff for all of his injuries and damages, both past and present, including but not limited to, past and future medical expenses, costs for past and future rehabilitation and/or home health care, lost income, permanent disability, including permanent instability and loss of balance, and pain and suffering.

3. Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff in an amount sufficient to punish Defendant and deter future similar conduct

4. Double or triple damages as allowed by law;

5. Attorneys' fees, expenses, and costs of this action;

6. Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

7. Such further relief as this Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

Dated: ____01/29/13_____          Respectfully submitted,

                                                  /S/ Stuart L. Goldenberg
                                                Stuart L. Goldenberg (MN# 0158719)
                                                GOLDENBERGLAW, PLLC
                                                800 LaSalle Avenue, Suite 2150
                                                Minneapolis, MN 55402
                                                Phone: (612) 335-9960
                                                Fax: (612) 367-8107
                                                Email: slgoldenberg@goldenberglaw.com

                                                COUNSEL FOR PLAINTIFF